JOHN MELTON, Respondent, v. ST. LOUIS & SAN FRANCISCO RAILROAD COMPANY, Appellant.

St. Louis Court of Appeals, March 3, 1903.

1. **Railroad:** INJURIES: LIABILITY OF RAILROAD COMPANY FOR INJURY ON PARALLEL HIGHWAY. A railroad company is not liable for injuries resulting from horses becoming frightened upon a highway parallel with the railroad, at the mere sight of its trains or the noises necessarily incident to the running of trains and the operation of the road.

2. ———: ———: ———. A railroad company owes no duty to one who is not upon the highway near the crossing to give the statutory signals, and is not liable to one whose horse, while upon a parallel highway, is frightened and runs away because signals were not given of the approaching train so that the owner of the horse failed to hear and prepare for the approach of the train.

3. ———: ———: ———: IMPUTED NEGLIGENCE. No negligence can be implied to a railroad company for failure to give warning of an approaching train by reason of the close proximity and paralleling of its right of way to a public thoroughfare.

Appeal from Newton Circuit Court.—*Hon. H. C. Pepper*, Judge.

REVERSED.

*L. F. Parker* and *J. T. Woodruff* for appellant.

(1) The defendant certainly had a right to run its train along its own track, and because it saw fit to do so in a way which, in the judgment of its employees, was proper, and no more likely to frighten horses than if a whistle had been constantly blown, upon what possible ground can it be condemned? It occurs to me that if there is to be any duty imposed upon a railroad company to give signals as its engines run over that part of its track paralleled by a public highway, then that duty must be imposed by the Legislature in

the form of a law yet to be formulated, for certain it is that none now exists. Bell v. Railroad, 72 Mo. 73; Williams v. Railroad, 135 Ills. 491; s. c., 26 N. E. 661; Railroad v. Payne, 29 Kan. 166. (2) If legislation was necessary to impose the duty to signal for crossings, then how much more necessary must it be in the instance of parallel roads? If, in the case of public road crossings, it was necessary to fix the distance from the crossings that signals should be given, and the kind and character of the signals, then who can say it is in the province of a court, without a single well-considered case as authority to support it, to lay it down as the law that such a duty exists and the limits of that duty. It seems the question here presented has never been before our supreme or appellate courts, which, to me, argues in favor of the position that the bar generally concur in the view that there is no such duty on the part of a railroad as here contended for. The case, however, is not wholly new, and the following will be found as authority for the position we maintain. Faber v. Railroad, 114 Mass. 350; Lamb v. Railroad, 140 Mass. 79; Flint v. Railroad, 110 Mass. 222; Elliott on Railroads, par. 1264, pp. 1985-6; Railroad v. Payne, 29 Kan. 166.

*Horace Ruark* for respondent.

(1) The duty of giving signals is not imposed wholly by statute. It is imposed by the common law, independently of statute. Wherever and whenever a railway company is charged with notice that persons are in danger, and there is reason to believe a signal would obviate or lessen that danger, the company is bound to use the same amount of care and caution that an ordinary prudent person would use under the same circumstances, and a failure so to do is negligence. 2 Thompson, Commentaries on Negligence (2 Ed.), sec. 1494, 1555, 1552, 1553 and 1564; Burger v. Railroad,

112 Mo. 238; Schmitz v. Railroad, 119 Mo. 272; Williams v. Railroad, 96 Mo. 275. (2) A railway company is bound to exercise special care and watchfulness at any point upon its track where people may be expected in considerable numbers and to give warning signals at such places. 2 Thompson on Negligence, sec. 1726; Powell v. Railroad, 59 Mo. App. 626; 8 Ency. of Law (2 Ed.), 412 and 422. (3) And where the view is obstructed the duty is greater in proportion to the danger. 2 Thompson, Com. on Negligence, sec. 1573; 8 Ency. of Law (2 Ed.), 412.

REYBURN, J.—Between 9 and 10 o'clock a. m. on the 26th of November, 1901, a clear, cold morning, John Melton, the plaintiff, was driving on the main public road leading from Neosho to Carthage. This road and the railroad of defendant for a distance run almost parallel to each other in an easterly and westerly direction, the public road being north of and at the point where the plaintiff was injured so close to the railroad that it extends to the fence along the right of way of the defendant. About a quarter of a mile west of the place of the accident, a road crossed the railroad track, and between a quarter and half a mile east of the same place another road also crossed the railroad and its right of way. Plaintiff was traveling eastwardly and had not crossed the western crossing behind him, and did not intend to cross at the east one, which he was approaching. He was in a buggy with the top up, and the side curtains down, driving along at an ordinary or moderate gait, expecting, as he contended, to be advised by signals of the approach of any trains that might happen to pass in either direction, and by the obstruction of intervening timber he could not see a train over a hundred yards ahead. A train came by rapidly from the east, his horses became frightened, his buggy overturned and broken, and he sustained the injuries complained of. The evidence showed

that the train failed to give any signals when approach-ing the place in the public road where the accident oc-curred, and likewise failed to give any signals at either crossing. From a judgment by default before a jus-tice of the peace of Newton county the defendant ap-pealed to the circuit court, where a dismissal being en-tered as to the first count, the case was tried before a jury on the second count of an amended statement, as follows:

"For another and further cause of action plain-tiff states that the defendant is now and at all times hereinafter mentioned was a corporation authorized to do business in the State of Missouri, and engaged in running and operating a railroad through Newton county, Missouri. That at a place where said railroad runs through Neosho township in said county said rail-road runs alongside and parallel with the traveled pub-lic highway leading from the city of Neosho to the vil-lage of Diamond in said county, and that said place is dangerous to persons traveling upon said highway with teams by reason of the liability of horses to be-come frightened and run from locomotives and trains of cars upon said railroad, and for the reason that at said place and upon the opposite side of said public highway from said railroad and running parallel with and alongside the same is a creek with steep banks known as Shoal creek, so that there is no means of es-cape for frightened teams. That trains coming from the northeast upon said railroad are invisible to persons traveling upon said public highway and in or near said dangerous place, all of which was well known to the defendant. That on the —— day of ——, 1901, plaintiff was traveling along said public highway with a team of horses and while in the exercise of due care and caution upon his part and while at said dangerous place, his team became scared and frightened at a lo-comotive and train of cars upon said railroad in charge of the agents and servants of defendant so that they

broke and destroyed plaintiff's buggy and threw plaintiff to the ground causing him great injuries in his chest and back and causing him to suffer great pain and mental anguish and rendering him incapable of laboring. That the agents and servants of defendant in charge of said train negligently and carelessly failed to ring the bell upon said engine or sound the steam whistle or give any other signal or warning of their approach; that said signal or warning could have easily been given by the agents and servants of defendant in charge of said engine and if so given by said engine or those in charge thereof before reaching said dangerous place, plaintiff would have heard the same and escaped therefrom and secured his team. That the said injuries to plaintiff were so caused by negligence and carelessness of defendant in failing to give any signal or warning of the approach of its train to said dangerous place.

"Plaintiff states that he is damaged in the sum of two hundred and fifty dollars for which he asks judgment and for costs."

At the close of plaintiff's case, defendant asked an instruction in the nature of a demurrer to the evidence, as follows:

"The court instructs the jury that under the pleadings and the evidence the plaintiff is not entitled to recover, and the verdict should be for the defendant."

Which instruction the court refused to give, and no testimony being offered on behalf of defendant, duly instructed the jury, which returned a verdict for the plaintiff, from which, after unsuccessful motions for new trial and in arrest of judgment, defendant has appealed.

As the statutory precautions requiring signals to be given by the engine of a railroad train approaching a crossing of a public street or highway have been held in this State, as well as in other States, to be in-

tended for the warning and protection of persons cross-
ing or intending to cross a railroad over a street or
public road by giving such persons upon the public high-
ways notice of an approaching train, respondent under
the conditions presented, and at the place of the acci-
dent, was not within the protection of the statute, and
proof of omission by appellant's train to whistle and
ring at the eastern or western crossing in obedience to
the law did not render it liable for the damages sus-
tained by him. Berger v. Railway, 112 Mo. 238; Bell
v. Railroad, 72 Mo. 50; Elliott on Railroads, par. 1264,
pp. 1985-6.

A railroad company is required by law to oper-
ate its trains with due and proper care and exercise
a proper degree of prudence and caution to avoid in-
jury either to passengers or the outside public, but the
public in turn must use proper care to avoid injury.
Additional to the signals by bell and whistle prescribed
by the statute at crossings of public thoroughfares un-
der proper circumstances and in compliance with the
high degree of care imposed by law on railroads to
operate their trains so as to avoid injury or danger,
railroads are required to give other warnings to the
public, as is established by the class of decisions cited
on behalf of respondent, requiring railroad trains stop-
ping or dividing at a public highway to give notice when
about to move or be again united. Berger v. Railway,
supra; Schmitz v. Railway, 119 Mo. 256.

But the principles recognized in these and simi-
lar cases lack application to the case under consider-
ation. The claim of plaintiff that if the statutory sig-
nals had been given at the eastern crossing he would
have been warned of its approach and escaped to a
part of the highway not so near the railroad track, is
illogical, remote and but conjectural. If the train as
it approached respondent had been emitting signals
continuously by whistle and bell, the peril of plaintiff
would have been but increased, the probability of his

horses taking fright but made greater. Defendant had the lawful right to operate its trains on its own tracks and was not responsible for injurious consequences unless promoted by its negligence. Neither by statute nor in the exercise of proper prudence, nor by the high degree of care exacted from it, was any duty imposed on appellant to give any signals at the place of the accident, and no negligence could be imputed to it for failure to give warning of the approaching train by reason of the close proximity and paralleling of its right of way to the public thoroughfare. Elliott on Railroads, supra; Faber v. Railroad, 114 Mass. 350; Lamb v. Railroad, 140 Mass. 79.

The demurrer to the evidence should have been sustained, and the judgment is accordingly reversed. *Bland, P. J.,* and *Goode, J.,* concur.