## JOSEPH NORTON *vs.* EASTERN RAILROAD COMPANY.

A railroad corporation, neglecting, when a train is approaching a place where its road crosses a highway at grade, to give the warning required by St. 1862, *c.* 81, or neglecting to give other proper warning beyond that required by statute, is liable to one injured thereby, though the injury results not from a collision, but from the fright, not guarded against for want of such warning, of the horse he is driving.

TORT for an injury caused by the plaintiff's horse taking fright at the passing of the defendants' cars.

At the trial in the Superior Court, before *Brigham*, C. J., the plaintiff offered evidence of the following facts: That October 10, 1872, he was riding in a wagon drawn by a horse, on a highway crossed by the defendants' tracks at grade; that a train of cars approaching the crossing could not be seen by persons travelling on the highway in the direction the plaintiff was going; that while he was driving at a speed not exceeding four miles an hour, and when he had approached within thirty-six feet of the track, a train of cars passed over the crossing and frightened the horse, causing him to kick and break the plaintiff's leg; that at the time there was no flagman near the crossing, and no flag was shown, bell rung or whistle sounded to indicate the approach of the train, though there was a flag station there, and a flagman was accustomed to display a flag there to warn travellers of the approach of a train; that on the day previous the plaintiff had been warned by a flagman of the approach of a train, and he alighted and held the horse while the train passed; that he was by this and by his knowledge that the crossing was a flag station, and that a flagman was usually there when trains passed, induced to believe that a flagman would show a flag if a a train was approaching; that he approached to within thirty-six feet of the track, solely because he was not warned by flagman, bell or whistle of the approaching train; that the fright of his horse and his injury were solely caused by this unwarned approach; that if a flagman had exhibited a flag, he could have seen him from the highway for a distance of four hundred feet; that at the time of the injury he had not come within the location of the railroad, and that the train, in passing over the crossing, did not come in contact with his person, with his horse or with his wagon.

This evidence was rejected by the presiding judge, who ruled that these facts, if proved, would not support the action, and thereupon the jury returned a verdict for the defendants.

At the request of the parties, the case was reported for the determination of this court upon the legal effect and the competency of the evidence offered and upon the ruling of the court thereupon. If such ruling was right, judgment was to be entered upon the verdict; otherwise a new trial was to be granted.

*A. Noyes*, for the plaintiff.

*S. Lincoln, Jr.*, for the defendants.

DEVENS, J. In order to sustain the verdict in the present case, the defendants rely upon the ground that even if the signals by bell or whistle were omitted by them, and if in consequence of this omission the plaintiff approached nearer to the train than he would otherwise have done, the injury being caused by the fright of the horse occasioned by this proximity, they were not to be held responsible therefor, because, as they contend, such signals are intended to protect travellers at highway crossings from actual collision only, or at most from taking any position which involves imminent danger of collision, and that this is the extent of the protection which they are bound to afford.

The obligation to give the signals, which the plaintiff offered to prove they omitted, is imposed upon them by St. 1862, *c.* 81, which cannot be thus limited. By being empowered to run their trains over their road, the defendants have necessarily the right to make the reasonable and usual noises incident thereto, whether occasioned by the escape of steam, the rattling of cars over the track, or in any other manner. Although such noises may cause much annoyance and danger to those who are driving horses in the immediate vicinity, they must be prepared for them. But when the Legislature has by statute directed that, at particular points of their road, they shall take especial precautions to notify those using the highways of the approach of a train, we cannot say that such precautions were intended solely for the benefit of certain travellers, even if they constituted the most numerous class, or that most liable to be endangered, if there were others also rightfully using such highways who would be liable to be im-

jured by the neglect of them. The fair construction is that these signals are also intended for the benefit of those approaching the crossing for whom their warning would be valuable, and that any one thus situated, who is injured by the omission of that which the statute requires, has just ground of complaint. There are undoubtedly portions of many highways in the Commonwealth in immediate proximity to which railways are located, and no statute requires that trains shall warn travellers of their approach to these portions. But while it would be competent for the Legislature to require that trains which were run upon tracks over lands, which the railways had been allowed to appropriate, parallel to or within defined distances from the public highways, should indicate their approach to such points by signals, the fact that it has not done so does not show that the duty which has been imposed upon them in approaching highway crossings at grade is intended to guard against injuries by collision only. At such crossings the railroads are permitted to interfere with the ordinary use of a public easement, and from the nature of the motive power employed by them and the difficulties attending its management, the exercise of their right temporarily excludes the ordinary traveller from the use to which he is at other times entitled. But as this use must often be made with animals liable to be alarmed by the noises of the passing train, it is important for his safety that he should be informed of the approach of the trains to the highway, in order that he may take proper measures against danger from such alarm. The signals are intended to give sufficient warning to enable him so to do.

The result reached by courts of other states, under statutes similar to our own, is the same as that to which we have come. *Wakefield* v. *Connecticut & Passumpsic Railroad Co.* 37 Vt. 330. *Hill* v. *Portland & Rochester Railroad Co.* 55 Maine, 438. *Wilson* v. *Rochester & Syracuse Railroad Co.* 16 Barb. 167.

Evidence was offered by the plaintiff tending to show that the defendants had failed to take precautions other than those expressly required by statute in announcing their approach to the crossing, (such as were proper and such as they had accustomed travellers on the highway to expect,) which was excluded by the

court, the plaintiff not having been exposed by the neglect of them to collision or any danger thereof. That mere compliance with the statutory requirements will not absolve the railroad corporations from any duties they were under before, or excuse them from taking other reasonable precautionary measures when their trains are crossing or about to cross a highway, is well settled. In case of collision it is for the jury to say whether such measures have been adopted, and whether under the circumstances of the case the railroad corporation has used reasonable care to prevent it. *Bradley* v. *Boston & Maine Railroad*, 2 Cush. 539. *Linfield* v. *Old Colony Railroad Co.* 10 Cush. 562. The reasons upon which we have held that the statutory requirements are not intended for the purpose of guarding against collision only, at crossings of the highway made at grade, compel us also to hold that the obligation to take such other reasonable precautions at such points as are required for the safety of the traveller upon the highway is one which is due to him not only for this purpose, but also for that of protecting him or of enabling him, in the exercise of reasonable care, to protect himself, in approaching the crossing, from the danger of alarm to the animals he is driving. The evidence upon this subject, which was excluded by the learned judge who presided, should therefore have been admitted.

The case of *Flint* v. *Norwich & Worcester Railroad Co.* 110 Mass. 222, was decided upon the ground that no negligence on the part of the defendants was shown. It therefore has no bearing upon this case, in which there is no doubt that there was sufficient evidence of negligence on the part of the defendants, and the only question is whether they are responsible therefor to this plaintiff.

It is further contended by the defendants that their negligence is a cause of the injury too remote to be considered, even if, by their neglect to give the signals which they were bound to give, the plaintiff was induced to approach so near with his horse that the animal was frightened by the rush of the train. But many circumstances may intervene between the wrongful act done or duty omitted and the injury, and yet, if it affirmatively appears that the mischief is attributable to the wrong or negligence as a

result which might reasonably have been anticipated therefrom, the party guilty thereof is liable. *McDonald* v. *Snelling*, 14 Allen, 290. If the neglect of the duties incumbent on the defendants caused the plaintiff to approach so near the passing train that his horse took fright from it, and the injury thereby occurred, he being in the exercise of due care, the defendants' negligence was such a proximate cause of the injury that they are liable therefor, although the two circumstances of the rush of the train and the fright of the horse intervened between the negligence and the injury. *New trial ordered.**

---

\* In March, 1874, in Suffolk, was argued and determined the case of

GEORGE K. PRESCOTT *vs.* EASTERN RAILROAD COMPANY.

TORT to recover for personal damages alleged to have been received by the plaintiff at the highway crossing of the defendants' railroad near the station . in Ipswich.

At the trial in this court, before *Colt*, J., the plaintiff offered evidence tending to show that he was driving along the highway in the direction of a crossing where the defendants' road crossed the highway at grade; that his horse was a safe one; that he approached the crossing without stopping; that he looked along the railroad in both directions in order to ascertain whether any train was approaching, but that his view of the railroad toward the east was obstructed by buildings; that he saw no train, and heard and saw no warning signals of any description to announce the approach of one; that he continued to drive on toward the track until his horse's head was nearly or quite on it, when he saw a train approaching from the east at considerable speed and nearly upon him; that a freight house had concealed the train until the moment he saw it; that either by his guidance or from the fright, the horse turned sharply to the right, and overthrew the vehicle, and in consequence the plaintiff was hurt.

The defendants requested the court to rule as follows :

" If the plaintiff placed himself in a situation in which it would have been perfectly safe to remain, so far as any collision with the train was concerned, and in which he would have been safe but for the restlessness of his horse, but his horse took fright and overturned the vehicle, then the defendants are not the responsible cause of the injury."

" The defendants are not responsible for an injury caused to the plaintiff by the overturning of the carriage, unless it appears upon the evidence that there was a collision with the train, or unless it appears that the plaintiff was induced, by the negligence of the defendants in failing to give proper signals or warnings, to put himself in a position where he was in peril of collision, and

where, in the reasonable apprehension of such collision, and in the exercise of a reasonable diligence in attempting to escape such peril, he received injury by the overturning of the carriage."

The court declined to give the rulings prayed for, but among other instructions not excepted to, ruled as follows : " If the plaintiff, in the exercise of ordinary care and prudence, in attempting to pass over the railway track at the crossing, within the location of the railroad, was placed in such peril by the neglect of the defendant corporation, its servants and agents, that exercising the same ordinary care in the attempt to save himself, he so turned his horse by the side of the track as to cause the carriage to be overturned, receiving the injury alleged, he may recover. And he may in like manner recover if the horse under these circumstances, frightened by the passing train, turned or jumped aside without the plaintiff's control. The question for the jury is, whether the circumstances of danger were such as to justify the plaintiff's conduct. Was it ordinary care and prudence? Ought he to have crossed or turned about or got out of his carriage? Was the character of his horse such as to require of him something more or less than he did? If the plaintiff's injury was the result of his own rashness and imprudence either in approaching the track or in his conduct after he found himself in peril, he cannot recover."

The jury returned a verdict for the plaintiff, and the defendants excepted.

*S. B. Ives, Jr.*, for the defendants.

*D. Saunders*, for the plaintiff.

DEVENS, J. This case is decided by that of *Norton* v. *Eastern Railroaa Co.*, *supra*. The defendants were not entitled to the instructions requested by them, which were substantially that the injury to the plaintiff must have been received either from actual collision with their train or in the attempt to escape actual collision, exercising due care in so doing. The plaintiff was entitled also to recover if by reason of the defendants' neglect he omitted to take precautions in regard to his horse which would have avoided the injury, or placed himself in such a position in reference to the passing train as he would not otherwise have done, and thereby lost the control of his horse, so that in either case the injury was caused by its fright at the rush of the passing train.

*Exceptions overruled.*